989 F.2d 494
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jwan Claude RAINEY, Petitioner-Appellant,
v.
H. Lawrence GARRETT, III, individually and as Secretary of
the Navy; Alfred M. Gray, General, Individually and as
Commandant of the U. S. Marine Corps; Michael P. Downs,
Commanding General, Marine Corps Base, Camp Lejeune, North
Carolina, Respondents-Appellees.
 No. 92-1043.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 4, 1992
Decided: March 16, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-91-521-HC-BO)
 Charles Anthony Maresca, Jr., NATIONAL INTERRELIGIOUS SERVICE BOARD FOR CONSCIENTIOUS OBJECTORS, Washington, D.C., for Appellant.
 Captain Gregory T. Mitchell, Office of the Staff Judge Advocate, United States Marine Corps, DEPARTMENT OF THE NAVY, Alexandria, Virginia, for Appellees.
 Andrew M. Forshay, Washington, D.C.; James H. Feldman, Jr., Peter Goldberger, CENTRAL COMMITTEE FOR CONSCIENTIOUS OBJECTORS, Philadelphia, Pennsylvania, for Appellant.
 Margaret Person Currin, United States Attorney, Linda Kaye Teal, Assistant United States Attorney, Raleigh, North Carolina, for Appellees.
 E.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and WILLIAMS, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Jean Claude Rainey brought this habeas corpus action under 28 U.S.C. § 2241 against Appellees H. Lawrence Garrett, III, Secretary of the Navy; General Alfred M. Gray, Commandant of the Marine Corps; and General Michael P. Downs, Commanding General of Camp LeJeune, North Carolina, alleging that the Marine Corps had improperly denied his application to be classified as a Conscientious Objector (CO).
 
 
 2
 The district court granted the Marine Corps' summary judgment motion and denied Rainey's habeas corpus petition after concluding that a basis in fact existed to support the Marine Corps' denial of CO status. We agree and, therefore, AFFIRM the order of the district court.
 
 I.
 
 3
 The facts, stated in the light most favorable to Rainey, are as follows: In 1988, Rainey voluntarily enlisted in the Marine Corps Reserves for an eight-year term. He completed recruit training at Parris Island, South Carolina, on October 21, 1988, and then attended infantry training school at Camp Johnson in Jacksonville, North Carolina. Private Rainey completed basic training on December 21, 1988, and the Marine Corps assigned him to Reserve Unit, Rations Company, Anacostia Naval Station, Washington, D. C.
 
 
 4
 On January 3, 1991, in preparation for what was to become Operation Desert Storm, the Marine Corps ordered Rainey to report for active duty at the Anacostia Reserve Training Center in Washington, D.C. Upon reporting for active duty, Rainey expressed his desire to be discharged as a CO and he participated in several arguments with Marine Corps personnel regarding the morality of the war in the Gulf. Rainey also possessed pamphlets which were critical of the United States' participation in that war. The Marine Corps, upon Rainey's refusal to obey an order to report to another room after one of these arguments, charged him with violation of U.C.M.J. Article 86 (failure to go at the prescribed time to his appointed place of duty); Article 90 (disobedience of a lawful direct order); and Article 134 (making a disloyal statement with intention to promote disloyalty). A courtmartial dismissed the Article 86 charge, and found him not guilty of the Article 134 charge. Rainey pleaded guilty to the Article 90 charge and received a sentence providing for 25 days confinement, a reduction in rank, and forfeiture of $300.
 
 
 5
 Upon his release on January 25, 1991, after only six days in detention, the Marine Corps transported Rainey to Camp Lejeune, North Carolina. On January 29, 1991, Rainey submitted his application for discharge as a conscientious objector. A chaplain and a psychologist interviewed Rainey in accordance with Marine Corps regulations, and found him to be sincere in his beliefs. The chaplain recommended that Private Rainey be discharged.
 
 
 6
 On or about February 7, 1991, Rainey's superiors ordered him to deploy to Saudi Arabia with his unit, notwithstanding his pending CO application. Apparently, Rainey's superiors ignored an administrative message to all Marine Corps locations instructing commanders to retain Marines claiming to be COs until their claims were adjudicated. On February 8, 1991, Rainey could not be found and the Marine Corps charged him with desertion and missing his unit's military movement under 10 U.S.C. §§ 85 and 87 (1988). Rainey surrendered himself to the Marine Corps on March 15, 1991.
 
 
 7
 After Rainey returned to custody, the officer investigating Rainey's CO application, Captain Wunderlich, held a hearing to consider whether Rainey should be granted CO status. Wunderlich contemporaneously initiated court-martial proceedings against Rainey for desertion and missing his unit's military movement. On April 9, 1991, after considering Rainey's and his wife's testimony, letters from friends, documentary evidence from clergy and a psychologist, and Rainey's military record, Wunderlich recommended denial of CO status. The Commandant of the Marine Corps officially denied Rainey's application on May 14, 1991. Rainey then filed this action for habeas corpus on August 9, 1991.
 
 
 8
 On September 23, 1991, Rainey pleaded guilty to the charges of desertion and missing his unit's military movement. The general court-martial sentenced him to 14 months confinement, forfeiture of $500 pay per month for 14 months, demotion to Private, and a bad conduct discharge. Rainey is presently on appellate leave status, which is granted to those who receive a punitive discharge from a court-martial. He brings this habeas corpus action based upon the theory that the Marine Corps' denial of CO status was improper.
 
 II.
 
 9
 A petition for habeas corpus may be utilized to challenge the rejection of a CO application. Strait v. Laird, 406 U.S. 341 (1972) (reservist not on active duty). In order to petition for habeas corpus, however, the petitioner must be "in custody." 28 U.S.C. § 2241(c) (1988). Active duty in the armed services is "custody" under § 2241. O'Connor v. McKean, 325 F. Supp. 38, 40 (N.D. Ala. 1970), aff'd, 442 F.2d 1351 (5th Cir. 1971). Thus, a serviceman is"in custody" when he is held contrary to a valid claim of conscientious objection. Rastin v. Laird, 445 F.2d 645, 647 (9th Cir. 1971).
 
 
 10
 Respondents first argue that Rainey has no standing to petition for habeas corpus because he was not "in custody" at the time he filed his CO application. Instead, the Marine Corps urges that they had retained Rainey on active duty because of his misconduct on February 8, 1991, having nothing to do with his application for CO status. Thus, the Marine Corps contends that Rainey was not"in custody" for the purposes of § 2241 at the time he filed his CO application. Rainey, however, argues that he was in custody because of the Marine Corps' wrongful denial of CO status, and that he was in such custody at the time he filed his petition for habeas corpus.
 
 
 11
 The operative time for custody under § 2241 is when the petitioner files the habeas petition in district court. Carafas v. La Vallee, 391 U.S. 234, 238 (1968) (habeas petition not rendered moot by unconditional release of petitioner prior to completion of writ proceedings); see also Weaver v. Pung, 925 F.2d 1097, 1099 (8th Cir.) (court tests custody at the time of filing of habeas petition under § 2254(a)), cert. denied, 112 S. Ct. 99 (1991). Rainey filed his petition August 9, 1991, after the Marine Corps charged him, but before his conviction.
 
 
 12
 While it is true that Rainey left his unit and was charged with desertion before the Marine Corps denied his petition for CO status, a district court may consider a habeas petition even while courtmartial proceedings are pending against the petitioner when those proceedings stem from incidents relating to the CO application. Parisi v. Davidson, 405 U.S. 34, 46 n.15 (1972). Rainey's general courtmartial charges stemmed directly from his fleeing his troop's deployment to a war zone. Thus, he was in custody for the purposes of 28 U.S.C. § 2241 at the time he filed his habeas petition and consequently has standing to petition for habeas corpus.
 
 III.
 
 13
 Respondents argue, alternatively, that if Rainey was in custody for purposes of 28 U.S.C. § 2241, the district court properly granted their motion for summary judgment. A habeas corpus petition may be denied summarily if the administrative record shows conclusively that it is without merit. 28 U.S.C. § 2243 (1988); see also Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254, Rules 8(a) and 11 (1988); United States v. Yearwood, 863 F.2d 6 (4th Cir. 1988) (hearing not required ons 2255 motion if record of case conclusively shows that petitioner is not entitled to relief). For CO applications, the review involves two steps: (1) the petitioner must assert clear and convincing evidence of prima facie entitlement to CO status; and, (2) if the petitioner does so, then the burden of proof shifts to the military to show it has a "basis in fact" to reject the application for CO status. See, e.g., Peckat v. Lutz, 451 F.2d 366, 367-68 (4th Cir. 1971); United States v. Pritchard, 413 F.2d 663, 665 (4th Cir.), cert. denied, 396 U.S. 995 (1969); Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957).
 
 
 14
 A prima facie showing of entitlement to CO status requires evidence of (1) conscientious opposition to participation in war in any form, (2) which is founded upon either religious training and belief, or ethical and moral belief held with the strength of a religion, and (3) which the applicant holds sincerely and deeply. 32 C.F.R. § 75.5; Clay v. United States, 403 U.S. 698, 700 (1971). Proof "incompatible" with Rainey's claims establishes a basis in fact to uphold the denial of CO classification. Taylor v. Claytor, 601 F.2d 1102, 1103 (9th Cir. 1979) (citing Dickinson v. United States, 346 U.S. 389, 396 (1953)). Judicial review of the military's determination that a basis in fact exists to deny a habeas corpus petition has been referred to as "the narrowest review known to law." Id. at 1103. A reviewing court does not substitute its judgment for that of the military or even examine the record to determine whether there was substantial evidence supporting the decision. "Rather, the court 'search[es] the record for some affirmative evidence' to support the authorities' overt or implicit finding that the applicant 'has not painted a complete or accurate picture of his activities.' " Id. at 1103 (quoting Dickinson v. United States, 346 U.S. 389, 396 (1953)). In searching for proof incompatible with a CO claim, a court may give substantial weight to an applicant's conduct, in particular the "outward manifestation of the beliefs asserted," in finding that such a basis in fact indeed exists in the military's determination of the applicant's CO status. 32 C.F.R. § 75.5(c)(2)(i).
 
 
 15
 Assuming Rainey has demonstrated prima facie entitlement, three undisputed facts nonetheless give the Marine Corps a basis in fact to deny him CO status: (1) Rainey applied for CO status only after receiving orders to report for active duty, (2) Rainey displayed no organized conceptualization of the wrongfulness of war, and (3) Rainey originally wished to leave the Marine Corps because he was displeased with the educational benefits he was receiving through the military and did not mention being opposed to war in any form.
 
 
 16
 First, although in applying for CO status in 1991, Rainey said he had "had serious doubts about taking part in any ... war" after his basic training and he "knew at the end of the Panama invasion" that he "could not participate in any war," he remained in the Marine Corps without expressing these beliefs until he applied for CO status. Furthermore, Rainey told his wife that he would reveal his CO beliefs if he were faced with deployment to Saudi Arabia. Thus, the Marine Corps had a basis to infer that expedience rather than sincerity prompted Rainey's CO application. Koh v. Secretary of Air Force, 719 F.2d 1384, 1386 (9th Cir. 1983) (petitioner submitted CO application one month after receiving active duty orders; timing was evidence of insincerity); Lobis v. Secretary of United States Air Force, 519 F.2d 304, 306-07 (1st Cir. 1975) (when applicant accepts benefits from military, and seeks CO status only when military commitment intrudes upon personal and professional life, denial of CO application is proper if other factors are present also); 32 C.F.R. § 75.5(c)(1) (applicant must show that CO conviction, once acquired, has directed his life and been the primary controlling force). But see Shaffer v. Schlesinger, 531 F.2d 124, 130 (3d Cir. 1976) (fact that petitioner's beliefs crystallized after only one month of active service is insufficient basis in fact to support finding of insincerity).
 
 
 17
 Second, Rainey's stated reasons for his opposition to war do not set out an organized conceptualization of the wrongfulness of war. He never delineated a comprehensive moral or ethical credo underpinning his asserted CO beliefs. Rather, he used specific political justifications to explain his position on the morality of war. He criticized United States foreign policy and its use of force in Panama, El Salvador, and the Persian Gulf, and he possessed similarly critical pamphlets. Generally, it is not enough that an applicant for CO status be opposed to war for political reasons. See Gillette v. United States, 401 U.S. 437, 443-48 (1971) (50 U.S.C. § 456(j) exempts those opposed to all wars, not just particular wars); 32 C.F.R.s 75.5 (while CO status must be based on intrinsic opposition to all war, it will not be denied simply because CO philosophy influences viewpoint concerning foreign policy); see also Cohen v. Laird, 439 F.2d 866, 868 (4th Cir. 1971) (basis in fact where most of objection to war was political diatribe condemning America's participation in Vietnam War).
 
 
 18
 Finally, Rainey joined the Marine Corps to get educational benefits that would advance his career goals. At the hearing held to determine his CO status, Rainey testified that he wanted to leave the Marine Corps since he "came out of school" because the Corps did not provide him with the benefits anticipated. CO status, however, cannot be based "solely upon considerations of policy, pragmatism, or expediency." Welsh v. United States, 398 U.S. 333, 342-43 (1970); Koh, 719 F.2d at 1386.
 
 
 19
 Thus, the Marine Corps did have a basis in fact to deny Rainey's CO application and the district court was correct to deny Rainey's petition for a writ of habeas corpus summarily.
 
 IV.
 
 20
 For the reasons stated herein, the district court's denial of habeas corpus relief is
 
 
 21
 AFFIRMED.